IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI`I

| | |
|---|---|
| D.E.B., individually and on behalf of his minor child, R.O.C.,<br><br>                                Plaintiff,<br><br>        vs.<br><br>STATE OF HAWAII, DEPARTMENT OF EDUCATION and KATHRYN MATAYOSHI, in her official capacity as Acting Superintendent of the Hawaii Public Schools,<br><br>                                Defendants. | CIVIL NO. 13-00059 DKW RLP<br><br>**ORDER AFFIRMING THE ADMINISTRATIVE HEARINGS OFFICER'S JANUARY 4, 2013 DECISION** |

**ORDER AFFIRMING THE ADMINISTRATIVE HEARINGS OFFICER'S
JANUARY 4, 2013 DECISION**

**INTRODUCTION**

Before the Court is Plaintiffs J.S.'s ("Student"), by and through his

Parent, D.S-S. ("Mother") (collectively, "Plaintiffs"),[1] appeal, pursuant to the

Individuals with Disabilities Education Act of 2004 ("IDEA"), 20 U.S.C. § 1400 *et*

---

[1] Plaintiffs' counsel named the wrong Plaintiffs in the Complaint. Consequently, at the Rule 16 Scheduling Conference, Plaintiffs' counsel informed the magistrate judge that a stipulation to amend the caption would be submitted. However, such a stipulation has thus far not been submitted. The caption still does not reflect the actual Student (J.S.) and Parent (D.S-S.) in this appeal.

*seq.*, from the Administrative Hearings Officer's ("Hearings Officer") January 4, 2013 Findings of Fact, Conclusions of Law and Decision ("Decision").  Pursuant to Local Rule 7.2(d), the Court finds this matter suitable for disposition without a hearing.  After careful consideration of the supporting and opposing memoranda, the administrative record, and the relevant legal authority, and for good cause appearing, the January 4, 2013 Decision is AFFIRMED.

## BACKGROUND

The following facts are taken from the Hearings Officer's Decision and were not specifically disputed on appeal.

At the time of the hearing before the Hearings Officer, Student was sixteen years old and in the eleventh grade.  He is eligible to receive special education and related services under the "other health disability" category.  He is presently attending private school and scheduled to graduate in 2014.  Student has had mixed performance in his classes, and he struggles with homework, especially in subject areas in which he has little interest.  Decision at 3 ¶¶ 1, 3.

An Individual Education Program ("IEP") for Student was developed on April 10, 2012, based on the private school's data and observations of Student at the private school.  The IEP placed Student at a DOE public school.  Pet. Ex. 1 (IEP) at 012.  The Hearings Officer found that the IEP provided, in relevant part, as follows:

The present levels of educational performance ("PLEPS") section of the April 10, 2012 IEP note, among other things, that Student is almost always in a good mood and cheerful, has a sense of humor, is respectful and re-directable, is physically independent and can access community resources and public transportation independently.

The PLEPs also note that Student's December 2009 intelligence test measured Student's full scale IQ at 96, in the average range.

. . .

The PLEPs note that Student needs extended time, study hall, chunking assignments, reminders and redirection to complete his work. Student also needs to further develop his writing skills. The special education teacher added that Student does not advocate for himself and is easily distracted.

The PLEPs impact statement states, "(Student) will participate in the general education curriculum, however, due to focus, processing and attention difficulties impacting his writing, reading and self-management skills, (Student) will participate in a combination of general education and special education settings. (Student) will need accommodations and specially designed supports to help him succeed in general education class settings."

Student's April 10, 2012 IEP offered Student special education services for 3940 minutes per month, counseling for 30 minutes per week, and numerous supplemental aids and services.

The placement provision of [the] April 10, 2012 IEP stated, "(Student) will not participate with non-disabled peers for English, Math, History, and two elective classes: Study Skills, Study Hall, because he requires specially designed instruction, and specially designed supports to assist him with his general education classes. His needs in the areas of written expression, math problem solving, and attention/self-management/processing difficulties, cannot be met in the general education setting even with the provision of accommodations and modifications. (Student) will participate with non-disabled peers for Science, two electives, advisory, recess, lunch, school-wide assemblies/activities. (Student) will receive special education services in a combination of general

3

> education/special education setting[s] on a DOE public school campus."

Decision at 3–4 ¶¶ 9, 11–14; *see* Pet. Ex. 1 (IEP) at 003–005, 011–013. The IEP provided that all supplementary aids and services, program modifications, and supports for school personnel would be provided in both general and special education classes. Pet. Ex. 1 (IEP) at 011–012. The DOE's April 17, 2012 Prior Written Notice ("PWN") also stated that accommodations would be available in both general and special education classes. *Id.* at 016.

Although Plaintiffs do not challenge the placement of Student at a public school campus, at the hearing, both Mother and Student testified that Student would not attend the DOE home school if he would be placed in special education classes. Decision at 3 ¶ 5; Hearing Tr. at 64:25–65:10. Mother further stated that she did not object to special education if the services were actually provided by the DOE as they are described in the IEP, but she had "doubts" as to whether the program could actually be implemented and she recognized that Student "refuses to go into a special ed environment." Hearing Tr. at 31:4–20. She also testified that she thought that accommodations were only available in special education classes and not in general education classes. *Id.* at 32:18–23.

On July 17, 2012, Plaintiffs filed a Due Process Request that alleged a single basis for relief:

> Student was denied a FAPE [(free and appropriate public education)] when his IEP did not identify the least restrictive environment for implementation of his IEP. He is to be placed into special education English, Math, History and two special education elective[s], i.e., Study Skills and Study Hall. Instead, Student should be in an inclusion classroom or general education classroom for these courses. Additionally, Student should be provided special education services within the Science course which will be in a general education class. The IEP make[s] it explicit that special education services will not be provided within the general education classroom for Science. This is a substantive denial of FAPE.

Administrative Record ("AR") Ex. 1 (Complaint) at 4–5.

After a hearing on November 12, 2012, the Hearings Officer issued his January 4, 2013 Decision. The Hearings Officer concluded that the IEP placed Student in the least restrictive environment. Decision at 10–13. Specifically, the Hearings Officer determined:

> Through the placement offered, Student is able to be with non-disabled peers in science, two electives, advisory, recess, lunch, and school-wide assemblies/activities. Student is also able to receive the benefits of special education in the other core subjects, study skills and study hall; and has the accommodations and supplemental aids and services listed in the IEP throughout the school day.

Decision at 13. The Hearings Officer also concluded that it was not a denial of FAPE to place Student in a general education class for science, with the supports and accommodations offered in the IEP. Decision at 13–15.

Plaintiffs' appeal of the Hearings Officer's Decision is presently before the Court.

5

## STANDARD OF REVIEW

**I.    IDEA Overview**

"The IDEA is a comprehensive educational scheme, conferring on disabled students a substantive right to public education and providing financial assistance to enable states to meet their educational needs." *Hoeft ex rel. Hoeft v. Tucson Unified Sch. Dist.*, 967 F.2d 1298, 1300 (9th Cir. 1992) (citing *Honig v. Doe*, 484 U.S. 305, 310 (1988)).  It ensures that "all children with disabilities have available to them a free appropriate public education [("FAPE")] that emphasizes special education and related services designed to meet their unique needs and prepare them for further education, employment, and independent living[.]"  20 U.S.C. § 1400(d)(1)(A).  The IDEA defines FAPE as special education and related services that—

> (A) have been provided at public expense, under public supervision and direction, and without charge;
> (B) meet the standards of the State educational agency;
> (C) include an appropriate preschool, elementary school, or secondary school education in the State involved; and
> (D) are provided in conformity with the individualized education program required under section 1414(d) of this title.

20 U.S.C. § 1401(9).  To provide a FAPE in compliance with the IDEA, a state educational agency receiving federal funds must evaluate a student, determine whether that student is eligible for special education, and formulate and implement an IEP.  20 U.S.C. § 1414.  The IEP is to be developed by an "IEP Team"

composed of, *inter alia*, school officials, parents, teachers and other persons knowledgeable about the child. 20 U.S.C. § 1414(d)(1)(B).

"Procedural flaws in the IEP process do not always amount to the denial of a FAPE." *L.M. v. Capistrano Unified Sch. Dist.*, 556 F.3d 900, 909 (9th Cir. 2009) (citations omitted). Once a procedural violation of the IDEA is identified, the court "must determine whether that violation affected the substantive rights of the parent or child." *Id.* (citations omitted). "[P]rocedural inadequacies that result in the loss of educational opportunity, or seriously infringe the parents' opportunity to participate in the IEP formulation process, clearly result in the denial of a FAPE." *Id.* (alteration in original) (citations and quotation marks omitted).

Compliance with the IDEA does not require school districts to provide the "absolutely best" or "potential-maximizing" education. *J.W. v. Fresno Unified Sch. Dist.*, 626 F.3d 431, 439 (9th Cir. 2010) (citation and internal quotation marks omitted). Rather, school districts are required to provide only a "'basic floor of opportunity.'" *Id.* (quoting *Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist. v. Rowley*, 458 U.S. 176, 201 (1982)). The FAPE need only be "appropriately designed and implemented so as to convey [the][s]tudent with a meaningful benefit." *Id.* at 433 (citations and quotation marks omitted).

**II.     Standard of Review**

The standard for district court review of an administrative decision under the IDEA is set forth in 20 U.S.C. § 1415(i)(2)(C), which provides:

> In any action brought under this paragraph, the court—
> (i) shall receive the records of the administrative proceedings;
>
> (ii) shall hear additional evidence at the request of a party; and
>
> (iii) basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate.

This standard requires that the district court give "'due weight'" to the administrative proceedings. *Capistrano*, 556 F.3d at 908 (quoting *Rowley*, 458 U.S. at 206) (some citations omitted). The district court, however, has the discretion to determine the amount of deference it will accord the administrative ruling. *J.W. ex rel. J.E.W. v. Fresno Unified Sch. Dist.*, 626 F.3d 431, 438 (9th Cir. 2010) (citing *Gregory K. v. Longview Sch. Dist.*, 811 F.2d 1307, 1311 (9th Cir. 1987)). In reaching that determination, the court should consider the thoroughness of the hearings officer's findings, increasing the degree of deference where said findings are "'thorough and careful.'" *Capistrano*, 556 F.3d at 908 (quoting *Capistrano Unified Sch. Dist. v. Wartenberg*, 59 F.3d 884, 892 (9th Cir. 1995)).

The district court should give "substantial weight" to the hearings officer's decision when the decision "evinces his careful, impartial consideration of all the evidence and demonstrates his sensitivity to the complexity of the issues

8

presented." *Cnty. of San Diego v. Cal. Special Educ. Hearing Office*, 93 F.3d 1458, 1466–67 (9th Cir. 1996) (citation and quotation marks omitted). Such deference is appropriate because "if the district court tried the case anew, the work of the hearing officer would not receive 'due weight,' and would be largely wasted." *Wartenberg*, 59 F.3d at 891. "[T]he ultimate determination of whether an IEP was appropriate," however, "is reviewed de novo." *A.M. ex rel. Marshall v. Monrovia Unified Sch. Dist.*, 627 F.3d 773, 778 (9th Cir. 2010) (citing *Wartenberg*, 59 F.3d at 891).

A court's inquiry in reviewing IDEA administrative decisions is twofold:

> First, has the State complied with the procedures set forth in the Act? And second, is the individualized educational program developed through the Act's procedures reasonably calculated to enable the child to receive educational benefits? [*Rowley*, 458 U.S. at 206–07] (footnotes omitted). If these requirements are met, the State has complied with the obligations imposed by Congress and the courts can require no more. *Id.* at 207.

*J.L. v. Mercer Island Sch. Dist.*, 592 F.3d 938, 947 (9th Cir. 2010) (some citations omitted).

The burden of proof in IDEA appeal proceedings is on the party challenging the administrative ruling. *Hood v. Encinitas Union Sch. Dist.*, 486 F.3d 1099, 1103 (9th Cir. 2007) (citations omitted). The challenging party must

show, by a preponderance of the evidence, that the hearing decision should be reversed. *J.W.*, 626 F.3d at 438 (citation omitted).

## DISCUSSION

As an initial matter, the Court notes that Plaintiffs do not challenge the procedural development of the IEP nor do they challenge the IEP's placement of Student at a DOE public school campus. Plaintiffs' opening brief also does not point to specific errors in the Hearings Officer's Decision. Instead, Plaintiffs generally assert a substantive denial of FAPE because Student was not placed in the least restrictive environment by being placed in special education classes and because the IEP failed to offer any support services for Student's general education components, including his science class. The DOE counters that Student, based on his needs and history, was appropriately placed in some special education and some general education classes. The DOE further contends that the IEP provides that accommodations will be provided to Student in both special and general education classes. The Court agrees with the DOE and concludes that the IEP placed Student in the least restrictive environment and, consequently, that there was no denial of FAPE. The Hearings Officer's Decision is affirmed.

## I. Least Restrictive Environment

Plaintiffs contend that placement of Student in special education classes in English, Math, History, Study Skills, and Study Hall was not a

placement in the least restrictive environment. However, Plaintiffs have not rebutted the substantial evidence presented and discussed by the DOE of Student's past performance, as reflected in the Present Levels of Educational Performance ("PLEPs") in the IEP, and this evidence supports the DOE's placement decisions. Pet. Ex. 1 (IEP) at 002–005.

The education of a disabled child should take place in the least restrictive environment. *See* 20 U.S.C. § 1412(a)(5)(A) ("To the maximum extent appropriate, children with disabilities . . . are [to be] educated with children who are not disabled . . . ."). "While every effort is to be made to place a student in the least restrictive environment, it must be the least restrictive environment which also meets the child's IEP goals." *County of San Diego v. Cal. Special Educ. Hearing Office*, 93 F.3d 1458, 1468 (9th Cir. 1996). In determining the least restrictive environment, this Court considers the following four factors: "(1) the educational benefits of placement full-time in a regular class; (2) the non-academic benefits of such placement; (3) the effect [Student] had on the teacher and children in the regular class; and (4) the costs of mainstreaming [Student]." *Sacramento City Unified Sch. Dist. v. Rachel H.*, 14 F. 3d 1398, 1404 (9th Cir. 1994).

Plaintiffs do not challenge the accuracy of the PLEPs and do not rebut the evidence that Student should be placed in special education classes. Pet. Ex. 1 (IEP) at 002–005; Answering Br. at 10. The Court concludes that the Decision

indicates exactly why placement in special education classes was necessary, consistent with the least restrictive environment factors enumerated above. For example, Student had difficulty in the private school with his core classes to the point of being placed on academic probation. Decision at 4 ¶ 10. Student had particular difficulty in language arts classes, even while receiving in those classes all of the accommodations that the IEP also identifies and includes. Further, at the IEP meeting, Mother stated that in her opinion, Student is "not gonna succeed in a general ed. class." IEP Audio Recording at 51:45; *see id.* at 48:28 ("It's either [special education classes for English and math] or he's going to sink like a rock."). Thus, the IEP team appropriately determined that placement in a general education class, even with all of the IEP accommodations, would likely result in a continued struggle for Student. There was little benefit, academic or otherwise, in placing Student in general education classes, even with accommodations.

    Concurrent with the need to place Student in special education classes, however, Student and Parents indicated that it was Student's goal to attend college after graduating. Pet. Ex. 1 (IEP) at 007. To facilitate that goal, the IEP team appropriately decided to place Student in one general education class, on a test basis, and chose science because that was the class in which Student did well in the private school, and the class in which he showed the most interest. IEP Audio Recording at 53:05; 55:19; 56:55. The record supports the Hearings

Officer's conclusion that placement in the general education science class, with the accommodations provided for in the IEP, was appropriate. Decision at 15. To the extent that Plaintiffs argue it, there is no merit to the contention that Student could not be placed in some special education and some general education classes concurrently. Student showed greater need in some areas and less in others. Accordingly, Student's placement in both special and general education classes only further supports the Court's conclusion that the IEP places Student in the least restrictive environment to meet Student's specific IEP goals.

Moreover, Student's placement in special education classes was not immutable. At the IEP meeting, the IEP team discussed how Student might be transitioned from special education classes to additional general education classes if he showed progress in the general education science class and special education classes. IEP Audio Recording at 56:09. Student's past performance evidenced a need for placement largely in special education courses. However, there was also a recognition that Student's performance could change and his IEP could be adapted accordingly.

In sum, the Court determines that the IEP placed student in the least restrictive environment to meet his IEP goals. The fact that Student did not want to attend special education classes does not alter this conclusion. Student's past

performance indicated a need for the mix of special education and general education instruction, all accompanied by the services enumerated in the IEP.

## II.     Accommodations

Plaintiffs argue that the IEP denied Student a FAPE because support and services would only be provided to Student in special education classes and there would be no support in general education classes. However, the record plainly refutes that contention, and the Court concludes that the Hearings Officer was correct that all accommodations in the IEP would be provided in both the general and special education classrooms.

While Plaintiff curiously asserts that "Student was to be given no special education support or services, at all" in general education courses, Opening Br. at 4, the record supports the contrary. In the IEP, for all of the accommodations[2] for student (listed in the IEP as "Supplementary Aids and Services, Program Modifications and Supports for School Personnel"), the location

---

[2] The following is an abbreviated list of accommodations provided by the IEP for Student as "Supplementary Aids and Services, Program Modifications and Supports for School Personnel" that would be provided in both special and general education classes: extended time to complete reading and writing tasks and tests; preferential seating; additional cues to gain/keep attention; additional (repeated and shortened) instructions; more frequent checking on student to ensure understanding and focus; alternate assessments; assigning homework and guidelines both orally and in writing; providing written instructions for projects; fewer written assignments and shortened assignments; encouraging paired working assignments; extended times for standardized testing; use of aids; more frequent encouragement and support; breakdown of large assignments into smaller increments; making lecture outline or notes available; use of resource room; early distribution of reading materials; audio and visual renditions of material; providing a proofreading checklist; modifying exams to allow for oral responses; and providing samples and a specific checklist of teacher expectations. Pet. Ex. 1 (IEP) at 011–012.

is listed as "General Ed./SPED". Pet. Ex. 1 (IEP) at 011–012. The PWN then explained that "[s]ervices will be provided in a general education/special education setting on a DOE public school campus." *Id.* at 016. Additionally, at the IEP meeting, it was explained to Mother that all accommodations would be provided in all classes. IEP Audio Recording at 44:01; 45:37.

To the extent that Plaintiffs contend that the IEP's provision of 3940 minutes per month for five special education classes meant that services were not available in general education classes, the record, as discussed above, does not support that argument. Those minutes were designated for the time Student would spend in the special education classes. This did not mean that Student would not receive all of the listed accommodations and services in both his special and general education classes. *See* Pet. Ex. 1 (IEP) at 013 ("[Student] will receive special education services in a combination of general education/special education setting on a DOE public school campus.").

## III. Reimbursement

Plaintiffs seek reimbursement for Student's private school expenses, but admit that this remedy is only permissible here if the Court concludes that there was a denial of FAPE. Opening Br. at 7–8. "Parents 'are entitled to reimbursement *only* if a federal court concludes both that the public placement violated IDEA and the private school placement was proper under the Act.'"

*Forest Grove Sch. Dist. v. T.A.*, 557 U.S. 230, 247 (2009) (quoting *Florence Cty. Sch. Dist. Four v. Carter*, 510 U.S. 7, 15 (1993)) (emphasis in original).  Because the Court concludes that there was no denial of FAPE for Student, Plaintiffs are not entitled to reimbursement for Student's private school expenses.

## CONCLUSION

The Hearings Officer's January 4, 2013 Decision is hereby AFFIRMED.

IT IS SO ORDERED.

DATED:  HONOLULU, HAWAI'I, November 27, 2013.



Derrick K. Watson
United States District Judge

---

<u>D.E.B. v. DOE</u>; CV 13-00059 DKW-RLP; ORDER AFFIRMING THE ADMINISTRATIVE HEARINGS OFFICER'S JANUARY 4, 2013 DECISION